# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

JOE D. O'REAR, )
 )
       Plaintiff, )
 )
v. ) Case No. CIV-17-221-SPS
 )
COMMISSIONER of the Social )
Security Administration, )
 )
       Defendant. )

## OPINION AND ORDER

The claimant Joe D. O'Rear requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-nine years old at the time of the administrative hearing (Tr. 28, 162). He has some college education, as well as vocational training in aircraft sheet metal, and has worked as a telephone clerk, cashier supervisor, and roofer (Tr. 37-38, 192). The claimant alleges that he has been unable to work since an amended onset date of January 1, 2012, due to dyslexia, paranoid schizophrenia, depression, mood disorder, posttraumatic stress disorder, alcohol dependency (in remission), hearing loss, and panic disorder (Tr. 30, 191).

### Procedural History

On June 23, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 13, 162-74). His applications were denied. ALJ Daniel Curran held an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 25, 2016 (Tr. 13-23). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels with the following non-exertional limitations:

> [T]he claimant has abilities for understanding, remembering, and carrying out only simple instructions; [and] making judgments that are commensurate with the functions of unskilled work [,] i. e., simple work-related decisions[,] responding appropriately to supervision, co-workers, and usual work situations[,] and dealing with changes in a routine work setting. However, the claimant must have work that does not require joint decision-making or teamwork and contact with members of the general public must be no more than occasionally and must not require the claimant to direct or receive directions from such members. In other words, interactions on the job with other people must be of a superficial rather than substantive nature. To be descriptive, rather than prospective, claimant is able to do only simple, routine, solitary, repetitive work that does not require close oversight by a supervisor. For medication/mental reasons, cl[aimant] must avoid exposure to unguarded hazards. These are things like uneven walking surfaces, open nip points, unprotected heights, moving machinery, open pits, open flames, open pools of water . . . dangerously sharp objects. Finally, claimant must have work that does not require more than occasional exposure to extremes of temperature, loud noises, smoke, flashing lights or other intrusive environmental distractions. Put descriptively rather than prospectively, claimant needs an indoors, climate-controlled environment.

(Tr. 17). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, packer, assembler, and wire sorter (Tr. 22-23).

## Review

The claimant contends that: (i) the Appeals Council failed to properly consider treating physician Dr. Meredith's medical opinion evidence, (ii) the ALJ failed to properly develop the record, and (iii) the ALJ failed to properly analyze the opinions of

Psychological Clinician Jamie Tippit, Dr. Barbara Hewett, Licensed Behavioral Practitioner Brian Johnson, and an LPC candidate whose name is illegible. Because the ALJ's decision is not supported by substantial evidence in light of the evidence submitted to the Appeals Council, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found that the claimant had the severe impairments of paranoid schizophrenia and other psychotic disorders, affective disorders, anxiety related disorders, and history of substance addiction (Tr. 15). The medical evidence relevant to this appeal reveals that the claimant presented to Central Oklahoma Mental Health Center ("COMHC") on August 9, 2010, and reported anxiety, problems with alcohol, and a history of bipolar disorder (Tr. 337-38). Licensed Behavioral Practitioner Brian Johnson noted the claimant presented as depressed with a flat affect and had been out of medication since early 2009 (Tr. 338). Mr. Johnson referred the claimant to case management and placed him on the waiting list for the medication clinic (Tr. 342). Thereafter, the claimant regularly attended case management sessions between April 2011 and October 2011 (Tr. 344-49). Additionally, Dr. Edwin Hill treated the claimant for bipolar disorder, panic disorder, and alcohol dependence between July 2011 and November 2011 (Tr. 347-50).

The claimant was incarcerated from April 2012 through January 2014, and during this time was regularly treated for depressive disorder not otherwise specified and paranoid schizophrenia (Tr. 355-460). An abnormal involuntary movement assessment conducted on December 16, 2013, indicated that the claimant had no abnormal facial, oral, extremity,

trunk, or global judgment movements, and that he fully cooperated with the assessment (Tr. 370). At his final Department of Corrections mental health appointment on January 7, 2014, Psychological Clinician Jamie Tippit noted that the claimant had occasional anxiety related to his upcoming discharge, but was doing well on his current mental health medications, and had a normal mood and affect, intact concentration and memory, and adequate insight and judgment in conversation (Tr. 368). Beginning March 2014 and continuing through at least June 2015, the claimant was treated at Mental Health Services of Durant for paranoid schizophrenia, social anxiety disorder, depression, anxiety, and extrapyramidal symptoms (Tr. 483-88, 499-502, 504-07). These examinations were consistently normal, and the claimant regularly reported that he was doing well (Tr. 483-88, 499-502, 504-07). The treatment notes reflect the claimant had various primary clinicians at Mental Health Services of Durant, but that the notes were under review by Dr. Merideth (Tr. 484, 486, 488, 500, 502, 505, 507).

On September 24, 2014, state agency psychologist Burnard Pearce, Ph.D., completed a Mental RFC Assessment wherein he found that the claimant was markedly limited in his ability to understand, remember, and carry out detailed instructions, and interact appropriately with the general public, and was moderately limited in his ability to maintain attention and concentration for extended periods (Tr. 53-54). Dr. Pearce explained that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not relate to the general public (Tr. 54). His findings were adopted on review (Tr. 78-79).

At the administrative hearing, the claimant testified that he experiences side effects from his medication including tremors, dizziness, and grogginess (Tr. 32). He stated that even with medication, he has daily panic attacks lasting from ten minutes to one hour that agitate him, cause his heart to race, and make it difficult to breathe and swallow (Tr. 33). He further stated that after a panic attack he is exhausted and nervous for "quite a while." (Tr. 33). The claimant testified that he hears voices and has visual hallucinations "every couple of days," which is an improvement, but that his hallucinations are still "pretty overwhelming" when they do occur (Tr. 34). As to his ability to concentrate, the claimant stated that he could not read a book for thirty minutes to an hour (Tr. 35).

Following the issuance of the ALJ's written opinion, additional evidence was submitted to the Appeals Council. Included in that submission was a form titled Medical Assessment of Ability to do Work-Related Activities (Mental) which Dr. Merideth completed on October 11, 2015 (Tr. 520-22). She opined that the claimant had substantial loss of his ability to perform the following activities in regular, competitive employment, and at best, could do them only in a sheltered work setting where special considerations and attention are provided: (i) perform at a consistent pace without an unreasonable number and length of rest periods/breaks, (ii) act appropriately with the general public, (iii) accept instructions and respond appropriately to criticism from supervisors, (iv) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, (v) cope with normal work stresses (even those inherent in low stress jobs), and (vi) finish a normal work week without interruption from psychologically based symptoms

(Tr. 520-21). Additionally, Dr. Merideth opined that the claimant had some loss of his ability to perform the following activities, but remained capable of consistently performing them independently, appropriately, and effectively: (i) apply common sense understanding to carry out simple one or two-step instructions, (ii) apply common sense understanding to carry out detailed but uninvolved written or oral instructions, (iii) maintain concentration for an extended period (two hours), (iv) maintain attention/stay on task for an extended period (two hours), (v) make simple work-related decisions, (vi) ask simple questions or request assistance, (vii) behave in an emotionally stable manner, and (viii) respond appropriately to changes in a routine work setting (Tr. 520-21). Dr. Merideth also opined that the claimant would be absent from work about four days per month (Tr. 522). She indicated that the limitations in her assessment had been applicable since she began treating the claimant (Tr. 521).

The claimant's contention regarding his impairments and their effect on his ability to work is bolstered by the evidence contained in the record but submitted after the ALJ issued his opinion. The Appeals Council was required to consider such additional evidence if it is: (i) new, (ii) material, and (iii) "relate[d] to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The Appeals Council *did* consider this evidence (Tr. 5), and the undersigned Magistrate Judge has no difficulty concluding that it does qualify.

Evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). The additional records submitted to the Appeals Council were clearly new evidence. Dr. Merideth's MSS was never presented to the ALJ prior to his decision, nor did she opine as to the claimant's limitations in the treatment records the ALJ did review, thus her MSS is neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Threet*, 353 F.3d at 1191. *See also Lawson v. Chater*, 83 F.3d 432, 1996 WL 195124, at *2 (10th Cir. April 23, 1996) (unpublished table opinion). In this regard, Dr. Merideth's MSS indicated that the claimant was unable to meet competitive standards in several abilities and aptitudes needed for unskilled work due to schizophrenia, paranoia, depression, sleep disturbance, and hallucinations/delusions (Tr. 356). This evidence suggests the claimant has impairments discounted or completely unaccounted for in his RFC, and it is therefore clearly material.

Finally, the evidence is chronologically relevant if it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). Dr. Merideth supported her opinion by referencing*, inter alia*, the claimant's diagnosis of schizophrenia, which was first diagnosed at the outset of his incarceration in 2012, thus her MSS is chronologically relevant to the ALJ's decision. Therefore, the evidence presented by the claimant after the

ALJ's decision *does* qualify as new and material evidence under § 416.1470(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).

In denying the claimant's request for review, the Appeals Council rejected Dr. Merideth's opinion by finding that the new evidence did not provide a basis for changing the ALJ's decision (Tr. 1-6). The Appeals Council is not required to make factual findings about a newly submitted treating physician opinion when it denies review. *See Vallejo v. Berryhill,* 849 F.3d 951, 955-56 (10th Cir. 2017). Nonetheless, the ALJ's decision must be supported by substantial evidence *including* any newly submitted evidence. *Id.* at 956, *citing O'Dell,* 44 F.3d at 858-59. Here, Dr. Merideth's opinion calls into question the claimant's ability to perform unskilled work, which is in direct conflict with the ALJ's determination that the claimant could perform the full range of work at all exertional limitations with some psychologically-based limitations (Tr. 17). On remand, the ALJ should re-assess the claimant's RFC in light of *all* the new evidence, and then re-determine the work he can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 7th day of September, 2018.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**